UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

LYNN A. ROWE,

                        Plaintiff,

            -against                                    1:11-CV-1150 (LEK/DRH)

NEW YORK STATE DIVISION OF
THE BUDGET,

                        Defendant.
_____

## DECISION and ORDER

**I.        INTRODUCTION**

        Plaintiff Lynn Rowe ("Plaintiff" or "Rowe") commenced the instant action pursuant to the

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, claiming that she was

discriminated against on account of her disability and retaliated against for engaging in protected

activity.  Dkt. No. 1 ("Complaint").  In her initial Complaint, Plaintiff named the New York State

Division of the Budget, James Kiyonaga, and Thomas Wood as Defendants.  See id. at 1-3.

Defendants moved to dismiss the claims against the individuals on the ground that there is no

individual liability under the ADA, and to dismiss the claims against the State of New York under

the Eleventh Amendment.  Dkt. No. 8 ("first Motion to dismiss").  In response to this Motion,

Plaintiff filed an Amended Complaint withdrawing the claims against the individual Defendants.

Dkt. No. 16 ("Amended Complaint").  Based on the filing of the Amended Complaint, Defendants

filed an application to withdraw their first Motion to dismiss, which the Court granted.  See Dkt. No.

14.  Presently before the Court is: (1) Defendant's renewed Motion to dismiss the Amended

Complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure; and (2) Plaintiff's Cross-

Motion for leave to file a second amended complaint.  Dkt. Nos. 17 ("Motion"), 20 ("Cross-Motion").

**II.      BACKGROUND**

The following facts are taken from Plaintiff's Amended Complaint and, for purposes of the instant motion, are assumed to be true.

Plaintiff suffers from peroneal muscular atrophy, type 1A, which is a physical condition that negatively affects her ability to walk and perform other motor skills.  Am. Compl. at 2.[1] Plaintiff is a New York State employee and works in the Expenditure/Debt Unit of the Division of the Budget.  Id. ¶ 1.  In April 2007, Plaintiff's prior supervisor, James Kiyonaga, began excluding Plaintiff from almost all meetings, trainings, and seminars.  Id.  He also made belittling remarks about Plaintiff's hearing.  Id.  On April 2, 2007, Plaintiff observed Kiyonaga mocking the way she walked.  Id.  Thereafter, Plaintiff requested a new supervisor, and Defendant investigated the matter. Id.  After the investigation, Kiyonaga remained Plaintiff's supervisor, and Plaintiff claims that the discriminatory behaviors and exclusionary practices escalated in retaliation to that internal investigation.  Id.

In June 2008, Plaintiff again requested a new supervisor.  Id. ¶ 2.  However, Kiyonaga remained Plaintiff's supervisor until he left the Division of the Budget on September 17, 2008.  Id. At that time, Defendant Thomas Wood became Plaintiff's supervisor.  Id.

In October 2008, Plaintiff became aware that she had been passed over for a promotion. Id. ¶ 3.  Another employee with a lower score on the civil service exam received the promotion.  Id.

---

[1]  Citations to the Amended Complaint are either to the electronic page number (pages 1 - 3) or to the paragraph number (pages 4 - 18).

Plaintiff requested a meeting with Wood.  Id.  At the meeting, held on October 29, 2008, Wood told Plaintiff that she did not receive the promotion because of a performance evaluation previously prepared by Kiyonaga, which stated that Plaintiff was not meeting the performance standards of her level (Grade 18 Budget Examiner), or even that of the lower Grade 14 level.  Id.  This performance review contradicted prior performance reviews completed by Kiyonaga before Plaintiff complained about his discriminatory conduct.  Id.  In July 2009, Plaintiff requested a copy of the negative performance evaluation.  Id. ¶ 5.  She was told that it was no longer available.  Wood also denied that Kiyonaga influenced the determination concerning the promotion and stated that Plaintiff did not meet the standard for promotion to Grade 23.  Id. ¶ 5.

Plaintiff filed a charge of discrimination with the EEOC on August 20, 2009.  Id. ¶ 3.  On August 31, 2009, Wood advised Plaintiff that he would be providing her with a performance review.  Id. ¶ 6.  Plaintiff received the review, which had some negative components, on September 23, 2009.  Id.  Plaintiff filed a second charge of discrimination with the EEOC on July 20, 2010, alleging that the negative September 23, 2009 performance review was in retaliation for engaging in protected conduct.  Id.  Plaintiff contends that the performance review falsely claimed that Plaintiff lost data and made other improper charges.  Id. ¶¶ 6-7.

Plaintiff further alleges that Wood "talks down" to her and excludes her from meetings, trainings and projects in which her co-workers are included.  Id. ¶ 8-9.  Plaintiff also claims that Wood repeatedly assigned her tasks that were impossible to complete, gave her unreasonably short deadlines, and assigned her to inappropriate tasks, all in retaliation for her protected conduct.  Id. ¶¶ 10-13.

On May 13, 2010, Plaintiff was transferred from her position as a Budget Examiner to a Budget Examiner Public Finance position, without her consent or prior knowledge.  Id. ¶ 14. Because Plaintiff was transferred out of her original position, she lost her "holds" on that position, which are important to secure a job in the event of layoffs.  Id.  After learning from the Civil Service department that this action was impermissible, Plaintiff complained to the human resources department and was transferred back into her original title.  Id.

Based on the foregoing, Plaintiff commenced the instant action pursuant to the Americans with Disabilities Act claiming that she was discriminated against on account of her disability (failure to promote), excluded from work activities on account of her disability, and retaliated against for engaging in protected activity.  Plaintiff seeks injunctive relief directing Defendants to cease all discriminatory and retaliatory behavior; include her in work projects, meetings, and training; to grant her a Grade 23 promotion, and to remove the negative performance appraisals from her record.  Id. at 18.

## III.      LEGAL STANDARD

In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "accept all [factual] allegations in the complaint as true and draw all inferences in the light most favorable to" the non-moving party.  In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007).  However, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  This plausibility standard "is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 570). Facial plausibility exists "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

IV.     **DISCUSSION**

**A. Eleventh Amendment**

Defendant New York State Division of Budget moves to dismiss on the ground it is entitled to Eleventh Amendment immunity. It is well established that governmental entities that are considered "arms of the state" also receive Eleventh Amendment immunity. Clissuras v. City University of New York, 359 F.3d 79, 81 (2d. Cir. 2004). Defendant correctly asserts that the Division of the Budget is a state agency entitled to Eleventh Amendment immunity. See Bruns v. Doerr, 13 F. App'x 29, 30 (2d Cir. 2001) (affirming district court's dismissal of claims against various State agencies, including the Division of Budget, pursuant to the Eleventh Amendment); Chafetz v. Roosevelt Island Operating Corp., No. 97 Civ. 0761, 2000 WL 1277337, at *3 (S.D.N.Y. 2000) (stating that the New York State Director of Budget is appointed by the Governor and that the Division of Budget is an arm of the state). Although Plaintiff seeks prospective injunctive relief, such relief is only available in suits against individual state officers acting in their official capacities. Deposit Ins. Agency v. Superintendent of Banks of N.Y., 482 F.3d 612, 617 (2d Cir. 2007). Because the Amended Complaint names only the Division of the Budget as a Defendant, the Court lacks subject matter jurisdiction pursuant to the Eleventh Amendment. See Davis v. Dept. of Corrections, No. 2:11-cv-164, 2012 WL 1269123, at *2-3 (D. Vt. Apr. 16, 2012) (collecting cases) (retaliation claims against the state under Titles I and V of the ADA are barred by the Eleventh Amendment);

5

Warren v. Goord, No. 99-cv-296F, 2006 WL 1582385, at *17 (W.D.N.Y. May 26, 2006) (retaliation claims against the state under Title V of the ADA are barred by the Eleventh Amendment); Briggs v. New York State Dept. of Transp., 233 F. Supp. 2d 367, 373 (N.D.N.Y. 2002); Salvardor v. Lake George Park Com'n, No. 1:98-cv-1987, 2001 WL 1574929, at *2-3 (N.D.N.Y. March 28, 2001). Accordingly, the Amended Complaint must be dismissed.

**B. Cross-Motion to Amend**

Having determined that Plaintiff's claims as set forth in the Amended Complaint are barred by the Eleventh Amendment, the Court now turns to Plaintiff's Cross-Motion for leave to file a second amended complaint.  In her proposed amendment, Plaintiff seeks to add Thomas Wood and Robert Megna, in their official capacities, as defendants.  The purpose of this is to enable her to take advantage of the exception to Eleventh Amendment immunity carved out in Ex Parte Young, 209 U.S. 123, 159-60 (1908).  Defendant opposes the Cross-Motion on the grounds that allowing the amendment would be futile and that Plaintiff has unduly delayed seeking to amend her complaint.

*1.  Plaintiff's Claim for Disability Discrimination Under the ADA*

Defendant claims that allowing Plaintiff to amend her complaint would be futile because she has failed to plausibly allege that she was subjected to an adverse employment action or that any action was on account of her disability.  Plaintiff responds that she was denied a promotion and denied training and other opportunities that would permit her to advance on account of her disability.

To establish a discrimination claim under the ADA, Plaintiff must prove the following elements: (1) Defendant is subject to the ADA; (2) Plaintiff was a person with a disability within the meaning of the ADA; (3) Plaintiff was otherwise qualified to perform the essential functions of her

job, with or without reasonable accommodation; and (4) Plaintiff suffered adverse employment

action because of her disability.  Shannon v. N.Y. City Transit Auth., 332 F.3d 95, 99 (2d Cir. 2003).

Defendants do not argue that they are not subject to the ADA, that Plaintiff is not disabled

within the meaning of the ADA, or that Plaintiff was not otherwise qualified to perform the essential

functions of the job, with or without reasonable accommodation.  Rather, Defendants argue that: (1)

Plaintiff did not suffer adverse employment action; and (2) there is no evidence of discrimination on

account of Plaintiff's disability.  The Court will address each of these issues.

a.  Adverse Employment Action

"An adverse employment action is a "materially adverse change in the terms and

conditions of employment."  Demoret v. Zegarelli, 451 F.3d 140, 151 (2d Cir. 2006) (internal

quotation marks and citation omitted).  "To be materially adverse, a change in working conditions

must be more disruptive than a mere inconvenience or an alteration of job responsibilities."

Mathirampuzha v. Potter, 548 F.3d 70, 78 (2d Cir. 2008) (citation omitted).  "[A] negative job

evaluation may constitute [an] adverse employment action in certain circumstances." Sanders v. New

York City Human Res. Admin., 361 F.3d 749, 756 (2d Cir. 2004) (citation omitted). "To constitute

an adverse employment action, negative evaluations must affect an ultimate employment decision,

including decisions concerning promotion, wages or termination."  Hicks v. Baines, 593 F.3d 159,

170 (2d Cir. 2010) (internal quotation marks and citation omitted); see also Sotomayor v. City of

New York, No. 10-CV-3411, 2012 WL 1889780, at *21 (E.D.N.Y. 2012) (and cases cited therein).

Plaintiff claims that Kiyonaga gave her a negative performance evaluation prior to his

departure from the Division of Budget in September 2008 and that this evaluation was a factor in her

not receiving a promotion that same year.  Although this evaluation may constitute an adverse

employment action, it is not properly before the Court because it is a discrete incident that occurred more than 300 days prior to the filing of the charge of discrimination.[2]  42 U.S.C. § 2000e-5(e)(1); National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 108-09 (2002) (a claim not filed with the EEOC within 300 days of the employment practice is time barred).

However, the denial of the promotion itself also qualifies as a discrete adverse employment action.  In her proposed second amended complaint, Plaintiff claims that she first learned that she would not receive the promotion on October 29, 2008,[3] which is fewer than 300 days before Plaintiff filed her charge of discrimination on August 20, 2009.  Accordingly, taking Plaintiff's allegations as true for purposes of deciding these Motions, any ADA claims relating to this promotion denial appears to have been timely raised.

Plaintiff also claims that she received a negative performance evaluation in July 2009.  There are no allegations in the proposed second amended complaint that this performance evaluation was accompanied by any other consequences, such as the denial of a promotion, decreased wages, etc.  Accordingly, this negative performance evaluation does not constitute an adverse employment action.

Plaintiff further claims that she was excluded from various meetings, projects and trainings, and was therefore not afforded "the same opportunities . . . for promotion and advancement

---

[2]  Plaintiff filed her charge of discrimination on August 20, 2009.  Three hundred days prior to August 20, 2009 is October 24, 2008.  The proposed amended complaint alleges that Kiyonaga left the Division of the Budget on September 17, 2008 and, therefore, necessarily completed the performance review on or before September 17, 2008.  This is more than 300 days prior to the filing of the complaint with the EEOC.

[3]  It is not clear on from the filings on what date this promotion decision was actually made.  Accordingly, the Court looks only to the October 29, 2008 date for purposes of deciding these Motions.

that my coworkers enjoy." Plaintiff also alleges that she was improperly transferred into a different title, thereby causing her to lose "holds" on her prior position. Upon Plaintiff's complaining of the situation, she was "put . . . back into [her] original title." In deference to Plaintiff's *pro se* status, the Court finds that these allegations – though inartfully pleaded – adequately describe materially adverse employment actions for this stage of the proceeding. See Galabya v. New York City Board of Educ., 202 F.3d 636, 640 (2d Cir. 2000) ("A materially adverse change might be indicated by . . . a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.").

### b. Evidence of Discrimination

To establish the fourth element of her claim, Plaintiff must demonstrate that her disability was a motivating factor in Defendant's decision not to promote her; to exclude her from the various meetings, projects, and trainings; or to transfer her to a different title. In her proposed second amended complaint, Plaintiff alleges that, in April 2007, Kiyonaga was "doing a mocking imitation of the way [Plaintiff] walked"; that Thomas Wood "always 'talked down' to [Plaintiff] as if [she] lack[s] some intellectual ability"; and that she has been excluded from some "meetings, training, and projects that [her] coworkers have been included on."

While these allegations may be consistent with a defendant's liability, they stop short of the line between possibility and plausibility of entitlement to relief because there are insufficient plausible factual allegations to show that any adverse employment actions were on account of Plaintiff's disability. Even assuming Kiyonaga once mocked the way Plaintiff walked, there are insufficient plausible factual allegations suggesting that he gave Plaintiff a negative performance evaluation or otherwise influenced the decision not to promote Plaintiff on account of her disability.

9

To the contrary, the allegations in the proposed amended pleading are more suggestive of retaliation, if anything; namely, that Kiyonaga engaged in a course of conduct against Plaintiff because she requested a new supervisor.  Similarly, there are insufficient allegations that Wood acted on account of Plaintiff's disability.  Plaintiff's contention that Wood talked down to her and did so "based on preconceived notions of [her] as a disabled individual" is conclusory and insufficient to demonstrate the necessary causal relationship between any adverse employment actions and Plaintiff's disability.  There are insufficient other factors attributing any discriminatory motive to Wood.  Accordingly, allowing Plaintiff to amend her complaint to assert claims of disability discrimination under the ADA would be futile.

### 2. *Plaintiff's Claim for Retaliation Under the ADA*

Defendants oppose Plaintiff's motion to amend her complaint to include a claim of retaliation on the grounds that Plaintiff did not suffer any adverse employment action.  For the reasons previously stated, the failure to promote Plaintiff, as well as the course of action in excluding Plaintiff from various meetings, projects and trainings and in changing Plaintiff's title, can be found to be adverse employment actions.[4]  Accordingly, the Court finds that allowing Plaintiff to amend her complaint to assert retaliation claims under the ADA would not be futile.

### 3. *Whether Plaintiff Acted with Undue Delay*

Lastly, Defendants argue that the Cross-Motion for leave to file an amended complaint should be denied because Plaintiff acted with undue delay.  The Court disagrees.  Although

---

[4] Defendants read the proposed second amended complaint to be alleging retaliation for filing of the EEOC complaints.  A fair reading of the proposed amended complaint, however, also alleges that Defendants retaliated against Plaintiff for complaining to the administrative/HR unit about Kiyonaga's behavior.  This may be found to be protected activity.

approximately nine months elapsed between the time this action was commenced and the time that Plaintiff filed the instant Cross-Motion for leave to amend, there is no indication she has been dilatory. The Court has no reason to believe that Plaintiff, who is proceeding *pro se*, has not attempted to further this litigation to the best of her ability. The Motions to amend in this case have been filed in response to Defendants' Motions to dismiss and in an effort to address Eleventh Amendment immunity. Significantly, the Motions to amend have served to do little more than change the official caption of the case to take advantage of the <u>Ex Parte Young</u> exception to the Eleventh Amendment. Plaintiff has not introduced significantly different factual allegations or sought different relief. Defendants articulate no prejudice that would result from permitting the amendment. Accordingly, the Court finds that any delay is an insufficient basis upon which to deny the motion for leave to file a second amended complaint.

### 4. Case or Controversy

The disposition of the instant motions does, however, cause a concern as to whether the court has subject matter jurisdiction. The Court has a continuing obligation to ensure it has subject matter jurisdiction. A federal court may only exercise jurisdiction over an actual injury traceable to the defendant and *likely to be redressed* by a favorable judicial decision. <u>Lewis v. Continental Bank Corp.</u>, 110 S. Ct. 1249, 1253 (1990). Article III of the Constitution confines courts to "resolve real and substantial controversies *admitting of specific relief* through a decree of a conclusive character." <u>Id.</u> (internal quotations, citation and alteration omitted) (emphasis added).

Here, Plaintiff is not seeking monetary damages in her proposed second amended complaint (indeed, they are unavailable because of the Eleventh Amendment). <u>See</u> Dkt. No. 20-2. Rather, Plaintiff seeks equitable relief directing Defendants "to instruct [appropriate] staff to remove

11

the performance reviews done by Thomas Wood which contain false statements and to granting the Grade 23." Id. at 21.  The Court has found that the performance reviews, standing alone, did not constitute adverse employment actions.  Accordingly, there is no basis for directing the removal of the performance reviews.[5]

Plaintiff also seeks an order requiring "Thomas Wood . . . to cease all discriminatory/retaliatory behavior, including exclusion from work projects, meetings, and job specific trainings . . . . [and an order] requesting Robert Megna to prohibit any further discriminatory/retaliatory practices . . . ." Id.  This relief amounts to little more than an "obey the law" injunction.  "Obey the law" injunctions are vague, do not require the defendants to do anything more than that already imposed by law, subject the defendants to contempt rather than statutorily prescribed sanctions, and are not readily capable of enforcement.  As such, these injunctions are not favored and would not be warranted here.  N.L.R.B. v. Express Pub. Co., 61 S. Ct. 693, 699-700 (1941); see also New York v. Shinnecock Indian Nation, 560 F. Supp. 2d 186, 189 (E.D.N.Y. 2008).  It, therefore, appears that there is no relief available to Plaintiff, even if Defendant is found to have retaliated against her in violation of the ADA.  Accordingly, the parties are directed to show cause within thirty days of the date of this Decision and Order as to whether this case should be dismissed for lack of subject matter jurisdiction.

## V.    CONCLUSION

Accordingly, it is hereby:

---

[5]  It is unclear to the Court as to whether Plaintiff's reference to Grade 23 is related to her requested removal of the performance reviews, or whether she is requesting some other form of relief.

**ORDERED**, that Defendant's Motion (Dkt. No. 17) to dismiss Plaintiff's Amended Complaint is **GRANTED**; and it is further

**ORDERED**, that the Court **RESERVES DECISION** on Plaintiff's Cross-Motion for leave to file a second amended complaint (Dkt. No. 20) pending the parties' submissions on the issue of subject matter jurisdiction; and it is further

**ORDERED**, that any further briefing on the issue of subject matter jurisdiction, from both parties, be filed within thirty (30) days of the date of this Decision and Order.

**IT IS SO ORDERED**.

DATED:      September 17, 2012
            Albany, New York

Lawrence E. Kahn
U.S. District Judge